## COLONIAL TRUST CO. OF WATERBURY, CONN., v. THORPE.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1912.)

No. 1,044.

BANKRUPTCY (§ 140*)—PROPERTY OF BANKRUPT—LEASE WITH OPTION TO PURCHASE—RESERVATION OF TITLE.

　　Plaintiff's decedent leased a bankrupt a cigarette machine, with an option to purchase on making specified payments, the title to remain in decedent until paid for. Thereafter decedent and plaintiff's president met and agreed on certain other terms of payment, whereupon decedent wrote the bankrupt a letter referring to such new terms of payment as a "remodification" of the terms of payment in the lease contract. In replying, the bankrupt, without objection, sent a check for $500 and notes as agreed. *Held*, that the change of the terms of sale did not constitute an abandonment of a provision of the written contract retaining title, and amount to a sale without reservation, so that on the buyer's bankruptcy decedent was entitled to recover the machine or its proceeds from the trustee.

　　[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in bankruptcy.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Colonial Trust Company of Waterbury, Conn., as executor of Frank H. Ludington, deceased, against R. T. Thorpe, receiver of the Ware-Kramer Tobacco Company, bankrupts, to recover a cigarette machine, or its profits, alleged to have been sold to the bankrupt under a contract of sale, reserving title until paid for. Judgment for defendant, and plaintiff appeals. Reversed.

G. Tayloe Gwathmey, for appellant.

Nathaniel T. Green, for appellee.

Before PRITCHARD, Circuit Judge, and McDOWELL, and CONNOR, District Judges.

PRITCHARD, Circuit Judge. On May 19, 1908, Frank J. Ludington and the Ware-Kramer Tobacco Company entered into a written contract whereby the former leased to the latter a cigarette machine, with an optionary right on the part of the lessee to purchase the machine. In so far as is now material, this contract reads as follows:

"The lessor hereby covenants and agrees that he will sell the said Columbia cigarette making machine No. 61 to said lessee at the termination of this lease for the sum of seventy-five hundred dollars ($7,500.00) provided said lessee shall notify said lessor in writing on or before the 15th day of December, 1908, of its intention to make such purchase.

"It is hereby covenanted and agreed between the parties hereto that, in the event of the lessee electing to make such purchase, the payment therefor shall be made in the following manner: The lessor will allow a discount of ten per cent., viz: seven hundred fifty dollars ($750.00) on the purchase price, and also credit the lessee with the installments of rental theretofore paid to the lessor in accordance with this lease, not exceeding six hundred dollars ($600.00); the balance of the purchase price, viz: sixty-one hundred and fifty dollars ($6,150.00) to be paid by the lessee in cash to the lessor on the first day of January, 1909; *whereupon the title* to said Columbia cigarette making machine No. 61 *will rest in the lessee, and the lessor will upon request of the lessee render to the latter a bill of sale for such machine.*"

Some correspondence, not set out in the record, passed between Ludington and Ware, the president of the tobacco company, in January and February, 1909; but it was not until February 26, 1909, that a purchase of the machine was agreed upon. Ware's account of the agreement then made is, so far as is material, as follows:

"A. We met there, and over the dinner Mr. Ludington said: 'Look here, Ware, you are a curious man. You made a contract with me and agreed to take a machine the 1st of January, and here it is the 1st of March and you haven't taken it. I don't know where I am at.' I said: 'I'll tell you where you are at. I came up to buy your darned old machine;' and he said, 'Are you here to pay for it?' I said, 'I am here to give you my notes for it;' and he says, 'Just tell me what you want, and, if it is in the realm of possible, I'll do it.' I told him that I wanted to give him notes for the machine. I explained certain conditions with regard to the company, and that we expected to have the capital increased about that time, and it would be an accommodation to me to let me pay for the machine with the notes. He said he was perfectly willing, but that he thought we ought to pay some money, and named the amount of $500. I then told him I would give him my check for $500 and give him notes for the balance, and that would close the incident. That was the conversation as near as I can tell it, boiled down.

"Q. Was anything said about retaining title to the machine until the notes were paid?

"A. That did not come up between us at all."

On February 27, 1909, the following letter was sent from Ludington's office to the tobacco company:

"Waterbury, Conn., U. S. A., Feby. 27, 1909.

"Ware-Kramer Tobacco Co., Norfolk, Virginia.

"Gentlemen: The writer is instructed by Mr. Ludington to confirm the conversation held between your Mr. Ware and Mr. Ludington at Hotel Belmont, yesterday remodification of terms of payment contained in your contract of May, 1908, covering Columbia cigarette machine No. 61 now in your works and which Mr. Ware reported you have decided to purchase. Would say that the understanding is as follows:

"You to make a cash payment of $500.00 immediately and deliver to me your eight promissory notes for $800.00 each, all dated March 1/09, the first one to become due and payable on June 1/09, the second one on September 1/09, and the remaining notes in like order, i. e. one every three months, the last falling due on Mar. 1/11,—$6,400.00 in notes, plus cash $500.00, and the amount of rental already paid, $600.00, making the total amount of purchase price $7,500.00. I am enclosing the notes herewith, which, if you find in order, kindly sign and return together with your check for the $500.00.

"It is understood that if you at any time wish to take up the notes I will allow you 10% discount on any of them that have not by their terms become due.

"Kindly give this your prompt attention and oblige,

"Very truly yours,                F. J. Ludington, by Shaw.

"Dictated V. M. S."

The answer thereto follows:

"March 15th, 1909.

"Mr. F. J. Ludington, P. O. Box 885, Waterbury, Conn.

"My Dear Sir: This refers to your favor of the 27th inst. Enclosed please find the notes properly signed, and our check for $500.00 as per agreement. The writer wishes to apologize to you for his tardiness in taking this matter up, but on his return home, found himself laid up with a terrible case of his eye trouble; in other words, can sympathize with your Mr. Ludington.   *   *   *

"Yours very truly,       Ware-Kramer Tobacco Company, by ——————."

After the bankruptcy of the tobacco company, the executor of Ludington filed a petition in the trial court, asserting retention of title to the machine, and praying that the receiver be required to deliver it to the petitioner. Subsequently, by agreement, the machine along with other property was sold and the claim transferred to $3,000 of the fund derived from the sale. The referee in bankruptcy ruled against the petitioner, the trial court affirmed the referee, and this appeal brings to this court for decision the question whether or not Ludington reserved title to the cigarette making machine until payment in full.

We are unable to agree to the conclusion reached by the learned trial court. Ware's statement of his conversation with Ludington in New York strongly tends to prove that the parties intended a sale under the conditions stated in the contract of May, 1908, varied only as to the time and manner of payment. The letter from Ludington's office dated February 27, 1909, bears quite convincing testimony to the same effect as to Ludington's intention. This letter was written to confirm the conversation between Ludington and Ware of the day previous "remodification of terms of payment in your contract of May, 1908." The language of this letter leaves in our minds no serious doubt but that Ludington intended to modify the written con-

tract only as to the terms of payment. The provision of the written contract retaining title was not abandoned, and was by Ludington certainly intended to remain in full force. In Ware's answer to the letter above mentioned, he tacitly accepts it as a correct statement of the verbal understanding. Under these circumstances, we are unable to hold that Ludington ever agreed to sell the machine, except under an agreement, in effect, that he should retain the title until payment in full. We are constrained to reverse and remand.

Reversed.